Filed 3/12/21  P. v. Sanders CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B302198 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A364296) |
| v. | |
| CHARLES SANDERS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David V. Herriford, Judge.  Affirmed.

Cynthia Grimm, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Petitioner Charles Sanders participated in a felony murder in 1979.  Sanders's confederate Jesse James Andrews brutally killed three people during the course of the robbery Sanders and Andrews planned.  Sanders testified during Andrews's trial.  The trial court found, after the hearing, that Sanders was not eligible for resentencing pursuant to Penal Code section 1170.95 (section 1170.95) because he acted as a major participant with reckless indifference to human life.  With defense counsel's consent, the trial court relied on our Supreme Court's description of the crime based primarily on Sanders's testimony in his confederate's trial.

Sanders appeals from the order denying his section 1170.95 petition for resentencing, arguing that the trial court was required to issue an order to show cause and hold a hearing.  Sanders's argument is unpersuasive because the court held a hearing at which the parties disputed whether Sanders was eligible for resentencing.  Although the trial court erred in failing to issue a formal order to show cause, that error did not prejudice Sanders.  Sanders demonstrates no other error, and we affirm the trial court's order denying Sanders's petition for resentencing.

## BACKGROUND

Sanders pleaded guilty to three counts of second degree murder and admitted a gun-use enhancement in exchange for a sentence of 17 years to life in prison.  (*People v. Andrews* (1989) 49 Cal.3d 200, 207.)  A jury convicted Andrews (Sanders's confederate), of three counts of first degree murder, one count of robbery, one count of rape, and one count of sodomy by a foreign object.  (*Id*. at p. 206.)  The jury also found three special circumstance allegations:  prior murder conviction, multiple murders, and robbery-murder.  (*Id*. at p 205.)  The prior murder occurred in Alabama in 1967.  (*Id*. at p. 221.)

2

### 1. *People v. Andrews* (1989) 49 Cal.3d 200 (*Andrews*)

With Sanders's counsel's consent, the trial court relied on the factual description of the murders in the Supreme Court's opinion in *Andrews*.

In *Andrews*, the Supreme Court reviewed Sanders's codefendant's case. The following was included in the high court's summary: "On the evening of December 9, 1979, police were summoned to the Los Angeles apartment of Preston Wheeler. There they found the bodies of Wheeler, Patrice Brandon and Ronald Chism. Wheeler had been stabbed in the chest six times and shot in the neck at close range with either a .32- or .357-caliber weapon. His face and head were bruised, and his face had been slashed with a knife. Brandon and Chism had been strangled with wire coat hangers. Their faces were bruised, Chism's extensively. Brandon's anus was extremely dilated, bruised, reddened and torn, consistent with the insertion of a penis shortly before her death. There was also redness around the opening of her vagina, and vaginal samples revealed the presence of semen and spermatozoa. All three victims were bound hand and foot." (*Andrews*, *supra*, 49 Cal.3d at p. 206.)

"Roughly a year later, police arrested Charles Sanders, . . . [Andrews's] accomplice, in connection with these crimes. During his interrogation, Sanders gave both a tape-recorded and a written statement. He later cooperated with the authorities and testified against [Andrews] at trial, pursuant to a plea bargain." (*Andrews*, *supra*, 49 Cal.3d at pp. 206–207.)

Sanders testified as follows: "After devising a plan to rob Wheeler, a drug dealer, Sanders and [Andrews] went to see their friend Carol Brooks on the night of December 8, 1979. Brooks lived in the same apartment building as Wheeler. [Andrews] was

armed with a .357 magnum.  Sanders had a .38- or .32-caliber automatic furnished by [Andrews].  Following their visit to Brooks, the two men went to Wheeler's apartment.  In response to their knocking, Wheeler, who apparently knew [Andrews], let them in.  Also inside the apartment was a woman (Patrice Brandon).

"After smoking some marijuana with Wheeler, [Andrews] and Sanders drew their guns.  Sanders tied Wheeler and Brandon with belts and socks, put on a pair of gloves, and began to search the apartment for drugs and money.  Except for some powder on a saucer which appeared to be cocaine, the search was unsuccessful.  [Andrews] questioned Wheeler, who denied having any drugs or money.  Saying he would make Brandon talk, [Andrews] dragged her into the kitchen and closed the door.  Sanders remained in the living room with Wheeler.

"Initially, Sanders heard [Andrews] talking to Brandon and hitting her; later he heard 'breathing as though they were making love.'  Shortly thereafter, [Andrews] came out of the kitchen.  Through the partially open kitchen door, Sanders saw Brandon's pants around her ankles.

"[Andrews] put his gun in Wheeler's mouth.  He threatened to kill Wheeler and Brandon unless Wheeler revealed the location of the drugs.  Wheeler said the 'dope' was in the attic, and pointed out a trap door leading up to it.  Sanders climbed into the attic.

"While in the attic, Sanders heard two shots.  When he came down, [Andrews] told him he had shot Wheeler because the latter had tried to jump out the window.  Sanders asked if Wheeler was dead.  [Andrews] responded he was 'standing right up' on Wheeler when he fired the gun.  Sanders saw blood on

4

Wheeler's neck and chest.  He suggested that they clean the apartment and leave.  When Sanders asked about Brandon, [Andrews] replied he had killed her before leaving the kitchen.

"During the cleanup of the apartment, [Andrews] responded to a knock on the door.  Sanders heard the visitor (Ronald Chism) ask if everything was all right and if Wheeler was there.  [Andrews] said Wheeler was home, and invited Chism inside.  [Andrews] then hit Chism on the head, tied him up, and took him into the bathroom.  Sanders saw [Andrews] sitting astride Chism's back, joining and separating his clenched fists in a tugging motion, apparently strangling Chism.  Sanders could not see what [Andrews] had in his hands.

"Thereafter, Sanders saw [Andrews] enter the kitchen and choke Brandon with a wire clothes hanger.  [Andrews] and Sanders then left the apartment and drove away.  [Andrews] gave Sanders some money, saying it was all he had found." (*Andrews*, *supra*, 49 Cal.3d at pp. 207–208.)

Prior to trial in written and tape-recorded statements, Sanders provided substantially similar description of events. (*Andrews*, *supra*, 49 Cal.3d at pp. 209–210.)

The Supreme Court described Carol Brooks's testimony at Andrews's trial as follows:  Brooks had known "[Andrews] and Sanders were at her house between 10 and 11 p.m.  [Andrews] told her they were going to Wheeler's apartment to get some money.  [¶]  A week or so after the murders, Sanders told Brooks of his involvement in the crimes.  Several weeks later, [Andrews] mentioned to Brooks he . . . [Andrews] shot Wheeler, took $300, and had sex with Brandon." (*Andrews*, *supra*, 49 Cal.3d at p. 208.)

## 2.	Petition for resentencing

Sanders filed a petition for resentencing alleging that he could not now be convicted of first or second degree murder because of changes to Penal Code sections 188 and 189 effective January 1, 2019.  Sanders requested that the trial court appoint counsel for him, and the court did so.

The complaint, information, judgment, and abstract of judgment in this case are unavailable.  The reporter's transcript of Sanders's plea could not be prepared because the reporter destroyed her notes.

The People opposed Sanders's petition for resentencing, relying on the facts as presented in *Andrews*.  Among other things, the People argued that Sanders could be convicted under current law because he acted with reckless indifference to human life.

With the help of counsel, Sanders filed a reply to the People's opposition.  Sanders did not challenge the People's reliance on *Andrews*.  Sanders argued that he did not act with reckless indifference to human life as follows:  "The gut-churning abominations of Jesse James Andrews are not the proper focus of this petition, rather, the court must examine [Sanders's] own actions.  He participated in [a] sophisticated home invasion robbery, but he did not kill anyone, and he did not rape anyone.  At Mr. Sanders' 1996 parole hearing, Deputy District Attorney . . . stated that, 'If he really, really cared about these people, he would have shot his crime partner.' "

Sanders attached a few pages from his 1996 parole hearing showing the deputy district attorney argued the following:  "This crime calls out for the death penalty . . . . He may not have pulled the trigger that killed [Wheeler], but he certainly tied [Wheeler]

6

up and tied [Brandon] up.  He may not have raped [Brandon] or sodomized her, but he certainly was there and had a gun.  He knew what was going on.  He still didn't leave the house.  There's testimony that [Brandon] was sodomized by a foreign object.  Her rectum was enlarged to over one inch in diameter.  The coroner also testified that this would have caused excruciating pain.  In fact, I can't imagine why he didn't hear anybody screaming.  He may not have strangled [Brandon] with the coat hanger, and he may not have strangled Ron with the coat hanger, but he certainly was there.  He certainly could have left, and he certainly could have stopped it.  If he really, really cared about these people, he would have shot his crime partner to stop him from killing the other two after he killed [Wheeler].  And then he very calmly stayed there 25 minutes longer cleaning up the prints, making sure his fingerprints weren't on anything in the house.  And then . . . [they] went and calmly had hamburgers.  This crime was just despicable.  I can't imagine society ever, ever wanting this man out of prison."

### 3. The trial court ordered a hearing on the petition

On July 31, 2019, the court issued an order setting a hearing for September 20, 2019, on petitioner's resentencing petition.  Prior to that hearing, the trial court asked the parties if they planned to "put on evidence."  The court asked defense counsel what he suggested, and defense counsel asked to "put the matter over for a hearing for that hearing and that Mr. [Sanders] be ordered out of prison."  The court told the parties it would "consider whatever the two of you present and I'll just have to make my decision based on that."  The trial court ordered Sanders out of prison to attend the hearing.

On September 20, 2019, the trial court held a hearing "to determine whether or not he [Sanders] is eligible for re-sentencing." The parties and the court focused on whether Sanders was a major participant who acted with reckless indifference to human life.

Sanders's counsel argued that no trier of fact ever determined whether Sanders was a major participant who acted with reckless indifference to human life. Counsel argued there was "no evidence to show that Charles Sanders knew just how wicked of a man Jesse Andrews was. [¶] As far as he knew, he was simply planning a burglary. That's what he signed up for. Then it turned into something far more unspeakable and far mor[e] violent than that, is entirely the fault of Mr. Andrews who sits on death row." After completing his argument, counsel stated, "At present, I have nothing further than that."

The trial court asked defense counsel whether the court could rely on *Andrews* "in terms of determining what the facts are. . . . [H]ow do you propose the court should make factual findings in this case?" Sanders' counsel responded, "I have no objection if the court relied upon the facts as recited in People versus Andrews. I just ask the court view that factual recitation through the lens of reading a capital appeal, which the California State Supreme Court usually begins with the recitation of facts so lurid that it seemingly always sets up a finding that the verdict shall be affirmed . . . ." Counsel continued, "I wish we at all times remember that . . . factual recitation is really directed against Mr. Andrews and not Mr. Sanders."

In response to questioning by the court on Sanders's plea, defense counsel argued that the reduced sentence (17 years to life for three second degree murders) suggested that "Mr. Sanders

was not terribly likely" to be found as a major participant with reckless indifference to human life. Counsel later admitted that he was speculating.

Relying on the facts in *Andrews*, the prosecutor argued that Sanders was a major participant who acted with reckless indifference to human life.

In rebuttal, defense counsel argued that "the only way that Mr. Sanders could have prevented further carnage would have been to shoot Mr. Andrews. And I cannot help but think had he done so, he would have been convicted of first-degree murder." Counsel argued, "Yes, he [Sanders] was armed with a gun. But to adopt the People's position means once he had it, once he started to do one thing bad, he really ought to have killed somebody." The court noted that the prosecutor had not made that argument but that defense counsel attached a portion of the hearing before the parole board in which the deputy attorney general made that argument.

At the conclusion of the hearing, defense counsel indicated that Sanders "would request a forthwith return to the Department of Corrections." The court responded, "I'll make that order. If his relief is granted, he would be released from there."

4.     **Order denying section 1170.95 motion**

In a written order, the trial court denied Sanders's petition for resentencing. The trial court concluded that Sanders was an active participant and acted with reckless indifference to human life. The trial court explained: "Petitioner was armed with a weapon, and he also knew that Andrews was armed. . . . Petitioner was physically present at the scene and helped Andrews tie up two of the victims. Although he was in a different area of the apartment when Wheeler was shot,

9

Petitioner saw Chism and Brandon being strangled but did nothing to aid them. . . . [I]t is unclear how long Petitioner and Andrews were in the apartment, but it is clear that they were inside for some time:  Wheeler and Brandon were tied up, Wheeler was interrogated about the location of drugs and money, Andrews raped and sodomized Brandon, and they were inside the apartment long enough for a neighbor to grow suspicious and inquire about Wheeler's welfare. . . . Petitioner did nothing to minimize the risk of violence.  Petitioner watched as Andrews beat Wheeler and raped and sodomized Brandon.  Further, it appears that Petitioner did not attempt to stop Andrews from answering the door, thereby allowing a new victim to be roped into the already dangerous robbery.  Finally, Petitioner did not attempt to stop Andrews as he first strangled Chism, and then Brandon, to death."  This timely appeal followed.

## DISCUSSION

Section 1170.95 was enacted to implement changes in the murder laws made by Senate Bill No. 1437.  (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 249.)  "Prior to the enactment of Senate Bill No. 1437, . . . both the felony-murder rule and the natural and probable consequences doctrine provided theories under which a defendant could be found guilty of murder without proof of malice." (*People v. Lee* (2020) 49 Cal.App.5th 254, 260, review granted July 15, 2020, S262459.)  Senate Bill No. 1437 amended the law to " 'require that a principal act with express or implied malice and by amending [Penal Code] section 189 to state that a person can only be liable for felony murder if (1) the "person was the actual killer"; (2) the person was an aider or abettor in the commission of murder in the first degree; or (3) the "person was a major participant in the

10

underlying felony and acted with reckless indifference to human life." [Citation.]' " (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 896, review granted Aug. 12, 2020, S263219.)  Only the last method is implicated in the current case.

Section 1170.95 affords a procedural vehicle for a petitioner to challenge retroactively a murder conviction that rests on a theory of murder no longer valid.  If petitioner makes a prima facie showing that he or she is entitled to relief under the statute, then the trial court "shall issue an order to show cause." (§ 1170.95, subd. (c).)  At such a hearing, the prosecution has the burden to prove beyond a reasonable doubt that the petitioner is ineligible for resentencing, and both sides may rely on the record of conviction or offer new evidence.  (*Id*., subd. (d)(3).)

Sanders argues that the case must be remanded for the trial court to hold a hearing pursuant to section 1170.95 subdivision (d).  The Attorney General agrees that the trial court erred in not issuing an order to show cause and that we should remand the matter to the trial court to conduct a hearing pursuant to section 1170.95, subdivision (d).  We disagree. Although the trial court did not formally issue an order to show cause, it, in fact, conducted the hearing required by section 1170.95, subdivision (d) at which Sanders was present, both parties had an opportunity to present new evidence, Sanders, in fact, did introduce new evidence, and Sanders agreed that the trial court could review the factual discussion in Andrews in engaging in fact-finding.  The record is devoid of any evidence that trial counsel was misled as to the purpose of the hearing. Any procedural error in not formally denominating that hearing as pursuant to an order to show cause was thus harmless.

11

## A.    The Trial Court Held a Hearing to Determine Whether Sanders Was Eligible or Ineligible for Relief

Sanders argues that the case must be remanded for the trial court to hold a hearing pursuant to section 1170.95 subdivision (d).

Section 1170.95, subdivision (d) provides:  "(d)(1) Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence. This deadline may be extended for good cause.  [¶] (2) The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated and for resentencing.  If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner.  [¶]  (3) At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.  If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.  The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens."

Sanders's argument that the case must be remanded for the trial court to hold a hearing pursuant to section 1170.95 subdivision (d) is unpersuasive because the trial court already held such a hearing. Prior to the hearing, the trial court indicated it would consider "whatever" counsel presented and make its "decision based on that." The trial court asked if the parties intended to put on evidence, as permitted under section 1170.95, subdivision (d). At the hearing, the court indicated that Sanders was present and the court was to determine "whether or not he is eligible for re-sentencing." The trial court indicated that the critical issue with respect to eligibility for resentencing was "whether or not Mr. Sanders can be deemed to be a major participant . . . ." No party challenged this procedure; instead both parties argued whether Sanders was eligible for resentencing. Sanders's counsel relied on new evidence, which is admissible only in a section 1170.95, subdivision (d)(3) hearing. At the end of the hearing, the court noted that if it granted relief, Sanders "would be released" further indicating that the purpose of the hearing was to determine whether to vacate the sentence.

The fact that Sanders's counsel chose not to present new evidence other than a partial transcript of a hearing before the parole board does not show the trial court deprived Sanders of the opportunity to present new evidence.

Even if the court erred in purportedly preventing Sanders the opportunity to present new evidence—a scenario the record does not support—Sanders demonstrates no prejudice. Although he states that either he or Brooks could have testified and Sanders could have introduced his written statements and tape recorded police interviews, Sanders identifies no new evidence

13

that would have supported his contention that he was not a major participant who acted with reckless indifference to human life.[1]  He identifies nothing that would contradict his own testimony relied upon by the trial court in finding Sanders ineligible for relief.

## B.     The Trial Court's Error in Failing to Issue an OSC Was Not Prejudicial

The trial court did not identify its order setting the hearing as an order to show cause.  Although under section 1170.95 subdivision (c), the trial court should have formally issued an order to show cause, Sanders demonstrates no prejudice from the court's failure to issue a formal order to show cause.  Sanders had notice of the hearing and the court ensured that Sanders was present as his counsel had requested.  Sanders does not identify any conduct he would have altered had the trial court issued an order to show cause rather than an order providing notice of the hearing.

## C.     Sanders Fails to Demonstrate Any Other Error

### 1.     *Sanders forfeited his claim of error based on the trial court's reliance on* Andrews

For the first time on appeal, Sanders argues that the trial court erred in relying on *Andrews*.  Even if arguendo the court erred in relying on *Andrews*, Sanders's counsel expressly consented to the court's reliance on it and thereby forfeited any

---

[1]  The Supreme Court described Sander's written and tape-recorded statements as "substantially similar to his testimony at trial."  (*Andrews*, *supra*, 49 Cal.3d at p. 209.)

14

objection. (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1313 [issue forfeited by defendant's failure to object].) In any event, Sanders does not show any error in the trial court's reliance on his testimony, which constituted admissions by a party. (Evid. Code, § 1220 ["Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity."].)

## 2. *Sanders's challenge to the finding that he acted with reckless indifference to Wheeler's life lacks merit*

Sanders does not challenge the trial court's conclusion that he was a major participant who acted with reckless indifference to human life with respect to the murders of Brandon and Chism. However, Sanders argues that the "court erred by finding Sanders acted with reckless indifference for Wheeler's murder because the analysis for the three murders is not the same. At the very least, Sanders's conviction for Wheeler's murder should be subject to resentencing because he did not act with reckless indifference." Sanders states that because he was not present when Wheeler was shot he could not have prevented the murder.

Sanders cites no legal authority to support his argument. He therefore forfeited his argument. (*People v. Hardy* (1992) 2 Cal.4th 86, 150.) In any event, Sanders's argument lacks merit. With respect to Wheeler's murder, no reasonable argument could

be made that Sanders was not a major participant who acted with reckless indifference to human life.[2]

Our high court in *People v. Banks* (2015) 61 Cal.4th 788, listed considerations relevant to determine whether a particular defendant was a major participant in the underlying felony. These factors are: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used? No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citations]." (*Id.* at p. 803, fn. omitted.)

In *People v. Clark* (2016) 63 Cal.4th 522, our high court set forth factors for determining whether a defendant acted with reckless indifference to human life. (*Id.* at p. 617.) These include (1) the defendant's knowledge and use of weapons; (2) defendant's physical presence at the crime and opportunities to stop the

_____

[2] We rely on Sanders's own admissions as described in *Andrews*. We do not rely on the Attorney General's description at Sanders's parole hearing even though Sanders presented them to the trial court.

16

crime or aid the victim; (3) duration of the crime; (4) defendant's knowledge of a confederate's likelihood of killing; and (5) defendant's efforts to minimize the risk of violence. (*Id.* at pp. 618–623.)

Here, Sanders's participation in an armed robbery of Wheeler in which Sanders threatened Wheeler with a firearm was known to carry a grave risk of death and was sufficiently significant to be considered major. (See *Banks, supra,* 61 Cal.4th at p. 803.) According to his own testimony, Sanders and Andrews planned the robbery. Sanders and Andrews went to Wheeler's apartment; each was armed. Both Andrews and Sanders drew their guns on Wheeler. Thus, Sanders knew of the weapons and actually used his weapon on Wheeler to effectuate the robbery.

Sanders did not try to stop the crime or aid Wheeler. To the contrary, Sanders facilitated Andrews's killing of Wheeler by Sanders tying Wheeler up with belts and socks. Sanders also made no effort to stop Andrews or to aid Wheeler (or the other victims).

Sanders was present when Andrews put his gun in Wheeler's mouth and threatened to kill Wheeler unless Wheeler told Andrews and Sanders the location of contraband. When Wheeler revealed the location of the contraband, Sanders left the room to look for the contraband and Andrews shot Wheeler. Although Sanders left the room, he knew that Andrews was threatening Wheeler with a gun and he showed no concern for Wheeler's life. Instead of assisting Wheeler, Sanders left the room to complete the robbery he and Andrews planned. Moreover, Sanders set Wheeler up to be killed by tying Wheeler and thereby ensuring that Wheeler could not escape from Andrews.

Although the record does not show the duration of the crime or whether Sanders had any insight into Andrews's criminal background, it is clear that the criminal conduct lasted a significant duration. First Sanders and Andrews smoked marijuana with Wheeler before they drew their guns. Then Sanders tied Wheler and Brandon and searched the apartment for drugs and money. Sanders overheard Andrews's rape of Brandon. After that, Sanders was present and observed Andrews with a gun in Wheeler's mouth and threatened Wheeler until Wheeler revealed the location of the drugs. This course of events provided Sanders with ample time to contemplate his role and he continued with the planned robbery even after overhearing Andrews rape Brandon and seeing Andrews place a gun in Wheeler's mouth.

Regardless of whether Sanders knew of Andrews's past criminal conduct, he knew that Andrews showed extreme levels of violence prior to the killing of Wheeler and did nothing to assist Wheeler. Sanders both planned and executed an armed robbery in which he knew that both he and Andrews were armed. The *Banks/Clark* factors support only the conclusion that Sanders was a major participant who acted with reckless indifference to human life.

### 3. *Sanders demonstrates no due process violation*

Sanders argues that "[t]he improper denial of a section 1170.95 petition deprives defendants of their liberty, requiring the state to provide them with due process protections." Sanders argues that he had a "liberty interest in having the trial court follow" the correct procedures. We disagree.

In rejecting a contention that section 1170.95 required a jury trial, our sister court held that the procedures outlined in

18

section 1170.95 are not " 'constitutionally compelled' " but rather constitute an act of lenity.  (*People v. Lopez* (2020) 56 Cal.App.5th 936, 958, review granted Feb. 10, 2021, S265974.) As we have explained, Sanders demonstrates no prejudice from the trial court's failure to issue an order to show cause, the only procedural error.  Even if we assume that error rose to a constitutional level, the error was harmless beyond a reasonable doubt.

## DISPOSITION

The order denying Sanders's petition for resentencing is affirmed.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.